**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ricky Kurt Wassenaar, | CIV 09-2444-PHX-JWS (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

Petitioner Ricky Kurt Wassenaar, who is confined under Arizona Department of Corrections' authority in the Ohio State Penitentiary, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondents have filed an Answer (Doc. 12), and Petitioner has filed a traverse (Doc. 17). On February 17, 2011, Respondents filed Supplementary Exhibits in support of their Answer (Doc. 19).

**BACKGROUND**

In January 2004, Petitioner and Steven Coy were inmates at the Arizona State Prison Complex – Lewis, near Buckeye, Arizona. See State v. Wassenaar, 161 P.3d 608, 612-13 (Ariz. Ct. App. 2007). On January 18, 2004, Petitioner and Coy, using homemade shanks, overpowered the corrections officer assigned to the kitchen where both inmates worked. See id. Petitioner then gained entry to the tower dressed as a guard and took two officers hostage. See id. Petitioner and Coy armed themselves with firearms located in the tower. See id. From January 18 to February 1, 2004, a standoff ensued between the two inmates and

a law enforcement tactical team. <u>See</u> <u>id.</u> The inmates surrendered on February 1, 2004. <u>See</u> <u>id.</u>

Petitioner represented himself at his trial with advisory counsel appointed by the trial court. (Doc. 12, Reporter's Transcript ("R.T.") 12/30/04 at 3-8.) After advising Petitioner that he would be required to wear a leg brace and stun belt during trial, whether he represented himself or was represented by appointed counsel, the trial court granted Petitioner's request to represent himself and waive appointed counsel. (Doc. 12, R.T. 12/30/04 at 3-8.) Petitioner proceeded to trial with advisory counsel from the Maricopa County Legal Defender's Office. (Doc. 12, R.T. 1/19/05 at 10.)

At the request of the sheriff's deputy providing courtroom security, and over Petitioner's objection, the trial court ordered Petitioner to be restrained while seated at the defense table with a leg brace and stun belt under his civilian clothing, and the court authorized additional restraint while Petitioner testified. (Doc. 12, R.T. 4/26/05 at 49-50.) While testifying, Petitioner was tethered to the witness chair with white nylon flex cuffs. (Doc. 12, R.T. 4/26/05 at 49-50.)

Also over Petitioner's objection, the trial court required Petitioner's direct and redirect examination to be conducted through questions posed by advisory counsel. (Doc. 12, R.T. 3/24/05 at 161-62.) The court permitted Petitioner to write out the questions advisory counsel would use during Petitioner's testimony. (Doc. 12, R.T. 3/24/05 at 161-62.)

On May 4, 2005, Petitioner was convicted on five counts of kidnapping, ten counts of dangerous or deadly assault by a prisoner, and one count each of promoting prison contraband, escape in the first degree, sexual assault, and aggravated assault causing temporary but substantial disfigurement. (Doc. 12, R.T. 5/4/05.) The trial court subsequently imposed consecutive life sentences on 16 of the counts, and lesser prison terms on Petitioner's convictions for promoting prison contraband, escape, and aggravated assault. (Doc. 12, R.T. 6/3/05 at 13-14, 60-63.)

On June 3, 2005, prior to the sentencing hearing, Petitioner filed a motion to vacate judgment. He appended a letter addressed to him from his investigator, Leland Damner,

setting forth the unsworn statements of four jurors purporting to have seen or heard from an outside source that Petitioner wore restraints during his testimony.  (Doc. 1, Exh. A.)  The trial court found the motion to vacate untimely.  (Doc. 12, Exh. B.)  Petitioner later filed another motion to vacate judgment and request for evidentiary hearing, and the court found the second motion to vacate untimely and, in any event, summarily denied it.  (Doc. 1, Exh. B; Doc. 12, Exh. B.)

Petitioner filed a timely notice of appeal, and counsel appointed from the Office of the Public Defender filed an opening brief raising seven claims of error alleging: (1) the denial of his rights to a speedy trial under Ariz.R.Crim.P. 8 and the federal and state constitutions; (2) the invalid waiver of his right to counsel; (3) the violation of his right to self-representation; (4) the violation of his right to present a complete defense (precluding testimony regarding his record in the department of corrections); (5) the violation of his right to present a complete defense (precluding testimony regarding why he secreted a handcuff key into the federal correctional facility); (6) the violation of due process when the jurors allegedly saw him in restraints; and (7) an abuse of discretion in denying him an evidentiary hearing on whether jurors saw his restraints.  (Doc. 12, Exh. C.)  On July 17, 2007, The Arizona Court of Appeals affirmed his convictions in a published opinion, State v. Wassenaar, 161 P.3d 608 (Ariz. Ct. App. 2007).

Petitioner filed a petition for review raising two issues: (1) the Arizona Court of Appeals set forth an improper standard of review in addressing Petitioner's shackling issues; and (2) the Court of Appeals improperly overruled the Arizona Supreme Court on whether Petitioner was entitled to an evidentiary hearing as to whether jurors saw his physical restraints.  (Doc. 12, Exh. D.)  The Arizona Supreme Court denied review without comment on January 8, 2008.  (Doc. 12, Exh. A, order, 1/9/08.)

During the pendency of his direct appeal, Petitioner filed a notice of post-conviction relief ("PCR") pursuant to Rule 32 of the Arizona Rules of Criminal Procedure, followed by a pro per petition for PCR in which he presented four claims: (1) the denial of due process in imposing restraints on him during trial and while testifying; (2) the invalid waiver of his

right to counsel because of failure to advise him that advisory counsel would pose questions during Petitioner's direct and redirect examination at trial; (3) error in the court's restitution order at sentencing; and (4) the Office of the Public Defender had a conflict in representing Petitioner on appeal because that office had briefly represented Steven Coy before being replaced by the Legal Advocate because of a conflict on the Coy matter. (Doc. 12, Exh. E.) The trial court modified its restitution order, but found Petitioner's first three claims precluded under Rule 32.2(a) and found the last issue (conflict of appellate counsel) premature. (Doc. 12, Exh. E, petition for review attachment, minute entry, 11/6/06.) The trial court denied Petitioner's motion for reconsideration on February 13, 2007, and later denied Petitioner's motion for extension of time to file a petition for review. (Doc. 12, Exh. A, order, 6/25/07.) The Arizona Court of Appeals subsequently dismissed Petitioner's untimely petition for review on June 25, 2007. (Doc. 12, Exh. A, order, 6/25/07.)

On December 26, 2007, again, prior to his direct appeal being final, Petitioner filed a pro per petition for special action alleging a conflict with the Office of the Public Defender representing him on appeal. (Doc. 12, Exh. F.) The Arizona Supreme Court declined jurisdiction on March 11, 2008. (Doc. 1 at 3-4.)

After the Arizona Supreme Court denied review of his direct appeal on January 8, 2008, Petitioner filed a timely notice of PCR on January 28, 2008. (Doc. 12, Exh. E.) He filed a pro per petition for PCR alleging ineffective assistance of appellate counsel claiming (1) that counsel failed to properly challenge on appeal the trial court's decision to have advisory counsel read Petitioner's direct examination questions at trial; and (2) that counsel failed to properly challenge on appeal the trial court's decision to impose restraints on Petitioner during trial. (Doc. 12, Exh. E, petition for review attachment, 6/6/08.) The trial court dismissed the petition on June 6, 2008, finding that Petitioner's objections to the use of advisory counsel and to the imposition of restraints had been raised on direct appeal and were rejected by the Arizona Court of Appeals, and therefore Petitioner "cannot sustain his burden to prove the prejudice prong of *Strickland* and *Nash*." (Doc. 12, Exh. E, petition for

review attachment, 6/6/08.)  Thereafter, Petitioner filed a petition for review, and the Arizona Court of Appeals denied review without comment on October 26, 2009.  (Doc. 12, Exh. A.)

On November 20, 2009, Petitioner filed the instant Petition for Writ of Habeas Corpus (Doc. 1).  Petitioner raises four grounds for relief: (1) The Arizona Court of Appeals erred when it unconstitutionally lowered the standard of review for harmless error analysis; (2) Petitioner's right to self-representation was violated; (3) Petitioner's due process rights and right to presumption of innocence were violated when the trial court ordered him to wear visible physical restraints in the presence of the jury during trial; and (4) Petitioner was denied effective assistance of appellate counsel.  (Doc. 1.)  Respondents have filed an Answer (Doc. 12), and Petitioner has filed a traverse (Doc. 17).

## DISCUSSION

In their Answer, Respondents contend that each of Petitioner's claims fail on the merits.  As such, Respondents request that the Court deny and dismiss Petitioner's Petition for Writ of Habeas Corpus with prejudice.

**A.    Grounds One through Four – Merits Analysis**

Pursuant to the AEDPA[1] , a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review).  "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ."  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

---

[1]  Antiterrorism and Effective Death Penalty Act of 1996.

1    A state court's decision is "contrary to" clearly established precedent if (1) "the state

2  court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

3  or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

4  decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

5  precedent."  Williams, 529 U.S. at 404-05.  "A state court's decision can involve an

6  'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule

7  but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)

8  extends or fails to extend a clearly established legal principle to a new context in a way that

9  is objectively unreasonable."  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

10    In Ground Four of his habeas petition, Petitioner claims that his Sixth Amendment

11  right to effective assistance of appellate counsel was violated.  The two-prong test for

12  establishing ineffective assistance of counsel was established by the Supreme Court in

13  Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail on an ineffective

14  assistance claim, a convicted defendant must show (1) that counsel's representation fell

15  below an objective standard of reasonableness, and (2) that there is a reasonable probability

16  that, but for counsel's unprofessional errors, the result of the proceeding would have been

17  different.  See id. at 687-88.

18    Regarding the performance prong, a reviewing court engages a strong presumption

19  that counsel rendered adequate assistance, and exercised reasonable professional judgment

20  in making decisions.  See id. at 690.  "[A] fair assessment of attorney performance requires

21  that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

22  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

23  perspective at the time."  Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting

24  Strickland, 466 U.S. at 689).  Moreover, review of counsel's performance under Strickland

25  is "extremely limited": "The test has nothing to do with what the best lawyers would have

26  done.  Nor is the test even what most good lawyers would have done.  We ask only whether

27  some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel

28  acted at trial."  Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other

grounds, 525 U.S. 141 (1998).  Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice.  See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on defendant to show prejudice).  To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id.  A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies.  See Robbins, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id. (quoting Strickland, 466 U.S. at 697).

In reviewing a state court's resolution of an ineffective assistance of counsel claim, the Court considers whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citations omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied Strickland incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.") (citations omitted).

**1.    Ground One**

1    In Ground One of his habeas petition, Petitioner contends that the Arizona Court of

2    Appeals applied an improper standard of review in addressing his shackling issues raised on

3    direct appeal.  Specifically, Petitioner states that the appellate court erroneously applied the

4    standard of review appropriate to "sufficiency-of-the-evidence issues" and claims that the

5    court should have applied a harmless error review placing the burden on the state to prove

6    "beyond a reasonable doubt that the error complained of did not contribute to the verdict

7    obtained."

8    Initially, the Court notes that Petitioner is not asserting that the appellate court's

9    decision was contrary to, or an unreasonable application of, Supreme Court harmless error

10   precedent.  Rather, Petitioner argues that the Court of Appeals applied an improper standard

11   of review in deciding his shackling issues.  Absent more, however, the application of an

12   improper standard of review by an appellate court is not a proper ground for federal habeas

13   relief.  See, e.g., Jenner v. Smith, 982 F.2d 329, 330 n.3 (8th Cir. 1993) (claim that state

14   appeals court applied wrong standard of review "does not state an independent ground for

15   federal habeas corpus relief").  The test is whether "the state-court adjudication resulted in

16   a decision that (1) 'was contrary to ... clearly established Federal law' ... or (2) 'involved an

17   unreasonable application of ... clearly established Federal law ... .'"  Williams, 529 U.S. at

18   412-13.  To be entitled to the relief he seeks, therefore, Petitioner must establish that the state

19   court's ruling was contrary to or an unreasonable application of federal law, not merely that

20   the court applied an improper standard in arriving at its decision.

21   In any event, Petitioner misstates the standard of review applied by the Arizona Court

22   of Appeals.  In its decision, the court stated under the "Factual and Procedural Background"

23   section:

24   > We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant. *State v. Greene*,
25   > 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998).  In our review of the record, we resolve any conflict in the evidence in favor of sustaining the
26   > verdict. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

27

28

1    <u>Wassenaar</u>, 161 P.3d at 612.  While the Court of Appeals applied this standard in construing

2    the evidence, it expressly applied the an abuse-of-discretion standard, as well as, harmless

3    error review in addressing the shackling claims on appeal.  <u>See</u> <u>id.</u> at 618-19.

4             Specifically, the court stated,

5        "Whether a defendant will be shackled is within the sound discretion of the
         trial court."  <i>State v. Lee</i>, 189 Ariz. 608, 617, 944 P.2d 1222, 1231 (1997)
6        (quoting <i>State v. Bracy</i>, 145 Ariz. 520, 532, 703 P.2d 464, 476 (1985)).
         "Courtroom security is within the discretion of the trial court 'absent
7        incontrovertible evidence' of harm to the defendant."  <i>Id.</i> (quoting <i>State v.
         McKinney</i>, 185 Ariz. 567, 576, 917 P.2d 1214, 1223 (1996)).  However, the
8        determination of whether to shackle a defendant must be case-specific, and
         should reflect particular concerns related to the defendant, including special
9        security needs or the risk of escape.  <i>State v. Gomez</i>, 211 Ariz. 494, 503, ¶ 40,
         123 P.3d 1131, 1140 (2005).

10   <u>Id.</u>  The court then determined that the trial court did not abuse its discretion when it ordered

11   that Petitioner be surreptitiously secured to the witness chair finding that the trial court's

12   ruling is "amply supported by the record."  <u>Id.</u> at 618-19.  The court also found that "there

13   was no competent evidence that any juror saw [Petitioner's] restraints."  <u>Id.</u> at 619.  Finally,

14   in finding that there was no competent evidence that any juror saw Petitioner's restraints, the

15   court found no abuse of discretion in failing to hold an evidentiary hearing on the issue.  The

16   Court of Appeals provided details derived from the proceedings – including the trial judge's

17   own findings – showing why the trial court's (1) decision to impose restraints, (2) conclusion

18   that no juror saw the restraints, and (3) decision not to hold an evidentiary hearing, was not

19   an abuse of discretion.  <u>Id.</u> at 618-19.

20            In applying harmless error review, the court stated,

21        if we assume <i>arguendo</i> that one or more jurors did see the restraints, ... it is
          apparent their observation did not affect the verdicts.  As noted above,
22        [Petitioner] was not convicted of all counts.  Further, the jury found that the
          State failed to prove some of the aggravating factors submitted for sentencing
23        purposes.

24   <u>Id.</u> at 619.  Nothing in the court's opinion suggests that if error occurred the court failed to

25   find the error harmless beyond a reasonable doubt as required by <u>State v. Henderson</u>, 115

26   P.3d 601, 607 (Ariz. 2005).

27

28

1   Accordingly, the Court will recommend that Petitioner's claim as asserted in Ground
2   One of his habeas petition be denied.

3       **2.    Ground Two**

4   Petitioner asserts in Ground Two that his right to self-representation was violated
5   because the trial court required him to testify through direct examination questions posed by
6   advisory counsel.   Petitioner contends that he "was denied the right to question the
7   Defendant; that [he] had to change [his] defensive strategy and tactics during the ongoing
8   trial; that [he] was not allowed to present [his] case, or even all of [his] questions ...; and that
9   [he] had been forced to forego [his] right to defend [himself] in order to receive [his] right
10  to testify."

11  A defendant who represents himself with the assistance of advisory counsel "must be
12  allowed to control the organization and content of his own defense, to make motions, to
13  argue points of law, to participate in voir dire, to question witnesses, and to address the court
14  and the jury at appropriate points in the trial."  McKaskle v. Wiggins, 465 U.S. 168, 174
15  (1984).  However, there is no absolute bar to advisory counsel's participation at trial over the
16  objection of a defendant who is self-represented.  See id. at 176.  "[T]he primary focus must
17  be on whether the defendant had a fair chance to present his case in his own way."  Id. at
18  177.  A defendant's right to self-representation is not infringed simply because advisory
19  counsel assists with a defendant's compliance with routine procedure, protocol or evidentiary
20  matters.  See id. at 183.

21  On March 24, 2005, a month before Petitioner testified, the trial judge advised
22  Petitioner that, pursuant to Rule 611(a), he would be required to permit Mr. Curry, advisory
23  counsel, to conduct direct and redirect examination.  (Doc. 12, R.T. 3/24/05 at 161-62.)
24  Specifically, the court stated that "if you choose to testify, ... I would require it be done by
25  question and answer.  So whether you write the questions for Mr. Curry or you make a
26  statement and from that statement Mr. Curry and/or you draft questions ... that's how I expect
27  you – if you choose to testify and your testimony be given in the normal course of question
28  and answer."  (Doc. 12, R.T. 3/24/05 at 161-62.)  Petitioner objected to the procedure

1    claiming that this forced him to accept assistance of counsel in violation of <u>Faretta v.</u>

2    <u>California</u>, 422 U.S. 806 (1975).  (Doc. 12, R.T. 3/28/05 a.m. at 52.)  Instead, he asked to

3    proceed as he did at his previous trial where he represented himself and was allowed to

4    testify narratively.  (Doc. 12, R.T. 3/28/05 a.m. at 54.)  The trial court overruled Petitioner's

5    objection noting that it had a responsibility to make sure the jury was presented with

6    admissible evidence and that the only way to do this during Petitioner's direct examination

7    was to use a question-and-answer method.  (Doc. 12, R.T. 3/28/05 a.m. at 57.)  This would

8    allow the jurors and the State to know each question before any answer or information was

9    elicited, and to allow the jurors and State to anticipate the scope of the answer.  (Doc. 12,

10   R.T. 3/28/05 a.m. at 57.)

11         Petitioner began testimony on April 26, 2005.  Before Petitioner's direct examination,

12   the court affirmed its decision that Mr. Curry would examine Petitioner with questions

13   prepared by Petitioner in order that "his testimony be done by way of question and answer"

14   and Petitioner would make his own objections during cross-examination by the prosecutor.

15   (Doc. 12, R.T. 4/26/05 p.m. at 7-8.)  The court also granted Petitioner's request to instruct

16   the jurors that the court had required Mr. Curry to question Petitioner.  (Doc. 12, R.T.

17   4/26/05 p.m. at 5, 7-8.)

18         On direct appeal, applying the standards set forth in <u>McKaskle</u> and Rule 611(a) of the

19   Arizona Rules of Evidence, the Arizona Court of Appeals found that Petitioner's right to

20   self-representation was not violated by requiring that he testify through questions posed by

21   advisory counsel.  Having reviewed the record, the Court finds that the state court's decision

22   was neither contrary to, nor an unreasonable application of, clearly established federal law.

23         "The right of self representation is not a license to abuse the dignity of the courtroom.

24   Neither is it a license not to comply with relevant rules of procedural and substantive law."

25   <u>Faretta</u>, 422 U.S. at 834 n.46.  In <u>McKaskle</u>, the Supreme Court contemplated advisory

26   counsel performing precisely the role Mr. Curry played in Petitioner's direct examination:

27         *Faretta* rights are ... not infringed when standby counsel assists the *pro se*
     defendant in overcoming routine procedural or evidentiary obstacles to the
28         completion of some specific task, such as introducing evidence or objecting to

1   testimony, that the defendant has clearly shown he wishes to complete.  Nor
2   are they infringed when counsel merely helps to ensure the defendant's
    compliance with basic rules of courtroom protocol and procedure.  In neither
3   case is there any significant interference with the defendant's actual control
    over the presentation of his defense.

4   McKaskle, 465 U.S. at 183.

5       Accordingly, we make explicit today what is already implicit in *Faretta*: A
        defendant's Sixth Amendment rights are not violated when a trial judge
6       appoints standby counsel – even over the defendant's objection – ... to assist
        the defendant in overcoming routine obstacles that stand in the way of the
7       defendant's achievement of his own clearly indicated goals.  Participation by
        counsel to steer a defendant through the basic procedures of trial is permissible
8       even in the unlikely event that it somewhat undermines the *pro se* defendant's
        appearance of control over his own defense.
9
    Id. at 184.
10
11      By requiring Petitioner to prepare his questions for direct examination so that Mr.

12  Curry could read them to Petitioner during his testimony, the trial court afforded Petitioner

13  control over his own defense as required by Faretta.  This procedure complied with the

14  requirements set forth in Rule 611(a), which authorizes the judge to exercise "reasonable

    control over the mode and order of interrogating witnesses and presenting evidence."  See
15
    United States v. Dujanovic, 486 F.2d 182, 186 (9th Cir. 1973) (a defendant's right to proceed
16
17  without counsel must be balanced against the need that trial be "conducted in a judicious,

18  orderly fashion").  Mr. Curry never took control of Petitioner's trial strategy, and the orderly

19  direct examination procedure used at trial did not create the perception that Petitioner was

20  not in control of his own defense.  At Petitioner's request, the trial court instructed the jury,

21  "Mr. Wassenaar is the next witness.  On my order, I order that his testimony be done by way

    of question and answer.  So Mr. Curry is going to be asking the questions of Mr. Wassenaar."
22
    Wassenaar, 161 P.3d at 616-17.  The court also informed the jury that Petitioner, rather than
23
24  advisory counsel, would make any objections.  See id.  Petitioner addressed the jury during

25  opening statements and closing arguments, made objections for the defense at trial,

    introduced evidence, and conducted the examination of witnesses.  See id.
26
27      Regarding Petitioner's claim that advisory counsel failed to ask him certain questions

28  and introduce certain evidence, as a pro per defendant, it was Petitioner's duty to ensure that

all evidence Petitioner sought to introduce was introduced.  Further, Petitioner fails to identify what questions advisory counsel did not ask, what evidence he failed to introduce, or what topics he failed to address.

Accordingly, the Court finds that Petitioner's right to self-representation was not violated by requiring that he testify through questions posed by advisory counsel.  The Court will recommend that Petitioner's claim asserted in Ground Two be denied.

\\\

### 3.      Ground Three

In Ground Three, Petitioner contends that his due process rights and right to presumption of innocence were violated when the trial court ordered him to wear visible physical restraints in the presence of the jury during trial.

In Illinois v. Allen, 397 U.S. 337, 344 (1970), the Supreme Court observed that "no person should be tried while shackled and gagged except as a last resort" because of the distinct possibility of "a significant effect on the jury's feelings about the defendant." Subsequently, the Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of discretion, that they are justified by a state interest specific to a particular trial." Deck v. Missouri, 544 U.S. 622, 629 (2005); see also Holbrook v. Flynn, 475 U.S. 560, 568-69 (1986).  "Therefore, due process requires the trial court to engage in an analysis of the security risks posed by the defendant and to consider less restrictive alternatives before permitting a defendant to be restrained" during trial.  Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999); see also Duckett v. Godinez, 67 F.3d 734, 748 (9th Cir. 1995), cert. denied, 517 U.S. 1158 (1996).  The trial court is "not required to state on the record all its reasons for imposing shackles, nor must it conduct an evidentiary hearing on the issue of necessity before ordering the use of physical restraints" but "the basis for the decision to shackle should be apparent from the record."  Duckett, 67 F.3d at 749 n.7.  In Ghent v. Woodford, 279 F.3d 1121, 1132 (9th Cir. 2002) (as amended), the Ninth Circuit held that in order for a defendant to prevail on a due process challenge to shackling in front of the jury,

1

2

3

> [A] court must find that the defendant was indeed physically restrained in the presence of the jury, that the shackling was seen by the jury, and that the physical restraint was not justified by state interests. Then, in order for the unjustified shackling to rise to the level of a constitutional error, the defendant must make a showing that he suffered prejudice as a result.

4   Id. at 1132.

5       The trial court imposed a leg brace and stun belt on Wassenaar for courtroom security

6   and later required surreptitious nylon flex restraints (tethering him to the witness chair)

7   during his testimony. (Doc. 12, R.T. 12/30/04 at 3-8; R.T. 4/26/05 at 49-50.) The trial court

8   made a full record demonstrating that (1) Wassenaar's restraints could not be seen from the

9   jury box; (2) the jurors had only a "fleeting opportunity" to see the flex restraints as they

10  passed from the jury room to the jury box; (3) Wassenaar drew the jurors' attention to

11  himself while in the witness box by making jokes as the jurors passed; (4) the jury's verdicts

12  were not unfairly biased – acquitting on one count and finding aggravating factors on two

13  other counts not proven; (5) after the denial of Wassenaar's Rule 20 motion prior to

14  Wassenaar taking the witness stand, Wassenaar faced a substantial likelihood of numerous

15  life sentences; (6) Wassenaar had made several statements saying he would try to escape

16  again; (7) the witness stand was 6 feet from the jury box and 20 feet from the courtroom

17  door; (8) the surreptitious restraints were the lesser alternative to having a deputy stand next

18  to Wassenaar in the witness box in the jury's constant view; (9) other evidence properly

19  admitted at trial indicated Wassenaar was already in custody at the time of the crime and had

20  been in custody since; and (10) Wassenaar suffered no unfair surprise by being restrained.

21  (Doc. 12, R.T. 4/26/05 a.m. at 51-52; R.T. 4/26/05 p.m. at 4-7; R.T. 6/3/05 at 57-58; Exh. B,

22  minute entry, 6/22/05.)

23      The Arizona Court of Appeals reviewed the record and agreed with the trial court's

24  reasoning, finding no abuse of discretion in imposing the restraints or in denying an

25  evidentiary hearing. See Wassenaar, 161 P.3d at 618-20. The Court finds that the state

26  court's decision was reasonable in view of Supreme Court precedent.

27      In Deck, the Supreme Court held that the constitution forbids the "routine use of

28  visible shackles" during the guilt and penalty phases alike, although it does permit a state to

shackle a criminal defendant in the presence of a special need.  See 544 U.S. at 626.  The Supreme Court held:

> [The Constitution] permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling.  In so doing, it accommodates the important need to protect the courtroom and its occupants.  But any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant on trial.

Deck, 544 U.S. at 633.

Thus, the Constitution prohibits the "routine" shackling of defendants in accordance with court or law enforcement policies.  See Deck, 544 U.S. at 634-35.  The Supreme Court, however, allows shackling when "case specific" security concerns exist and when the record contains "formal or informal findings" indicating that the trial judge had required shackling in response to security or decorum concerns.  See id.

Here, the court twice set forth its formal findings explaining its decision to impose surreptitious restraints.  (Doc. 12, R.T. 6/3/05 at 57-58; Exh. B, minute entry, 6/22/05.) These findings articulated "case specific" security concerns related to Petitioner, particularly while he was testifying from the witness stand.  (Doc. 12, R.T. 4/26/05 a.m. at 51-52; R.T. 4/26/05 p.m. at 4-7; R.T. 6/3/05 at 57-58; Exh. B, minute entry, 6/22/05.)  This is a case where "the record itself makes clear that there [were] indisputably good reasons for shackling," Deck, 544 U.S. at 635, and all of the reasons the court gave for restraining Petitioner were specific to the circumstances of the case as required by Deck.[2]

Furthermore, assuming error under these specific circumstances, the record fails to show that Petitioner was prejudiced by the restraints.  See Ghent, 279 F.3d at 1132; see also State v. Reid, 559 P.2d 136, 143 (Ariz. 1976) (unjustified restraint of defendant was harmless error where record contained no evidence that he was prejudiced).  Although Petitioner presented the trial court with a letter from his investigator purporting that four jurors had seen

---

[2]  Incidentally, Deck involved the use of visible shackles.  Petitioner, however, wore surreptitious restraints under his clothing, and every effort was made to keep the restraints hidden.

1   or had heard about the restraints, this evidence was untimely offered.  (Doc. 1, Exh. A, B.)

2   Even if the letter had been properly presented to the trial court, it is not dispositive.  The

3   statements were the unsworn statements of individuals relayed via the unsworn letter of the

4   investigator, and did not constitute competent evidence.  In addition, the jury acquitted on

5   one count and found two aggravating factors not proven, showing that the jurors did not

6   categorically convict Petitioner.  (Doc. 12, R.T. 6/3/05 at 57-58; Exh. B, minute entry,

7   6/22/05.)  Thus, even if, one or more jurors saw Petitioner's flex restraints while he was in

8   the witness box, they based their verdicts on the evidence.

9          Moreover, the trial court was consciously protective of Petitioner's rights.  Judge

10   Granville, together with advisory counsel, personally tested the views from around the

11   courtroom and found that Petitioner's restraints could not be seen from the jury box.  (Doc.

12   12, R.T. 6/3/05 at 57-58; Exh. B, minute entry, 6/22/05.)  The judge found that the jurors had

13   at best only a "fleeting opportunity" to see the restraints as they passed from the jury room

14   to the jury box and noted "no halting or indication by any juror of making such an

15   observation."   (Doc. 12, R.T. 6/3/05 at 57-58; Exh. B, minute entry, 6/22/05.)   The

16   surreptitious nylon restraints were the lesser alternative to having a deputy standing next to

17   Petitioner in the witness box in the jury's constant view.  (Doc. 12, R.T. 6/3/05 at 57-58;

18   Exh. B, minute entry, 6/22/05.)  In addition, it was never disputed that Petitioner was an

19   inmate at the time the offenses were committed and was serving a 28-year sentence in March

20   and April 2005 when his trial took place.  (Doc. 12, R.T. 4/4/05 p.m. at 9-10.)  The Arizona

21   Supreme Court has upheld the imposition of shackles on defendants already in prison on

22   other offenses, even in the absence of specific courtroom behavioral problems on the part of

23   the defendants.  See, e.g., State v. Johnson, 594 P.2d 514, 526 (Ariz. 1979) (trial judge did

24   not abuse his discretion in requiring that prison inmate defendants be shackled by leg irons

25   and guarded at trial after he was informed of prior violent conduct of defendants in prison,

26   though there was no indication that defendants had tried to escape).

27          Accordingly, the decision to impose restraints during trial and while Petitioner was

28   in the witness box was a "case specific" determination by the trial court, balancing

1   Petitioner's Sixth Amendments rights with reasonable security concerns.  The Court will

2   recommend that Petitioner's claim as asserted in Ground Three be denied.

3       **4.     Ground Four**

4           In ground four of his habeas petition, Petitioner claims that he was denied effective

5   assistance of appellate counsel.  He asserts both that the Office of the Public Defender had

6   a conflict in representing him on appeal, and that his counsel on appeal was ineffective for

7   failing to properly challenge the decision to have advisory counsel read him the direct

8   examination questions and failing to properly challenge the decision to impose restraints.

9           To establish a conflict of interest in counsel's representation, Petitioner must show an

10  "actual conflict," that is, that counsel's alleged conflict actually affected the adequacy of his

11  representation – as opposed to a mere theoretical division of loyalties.  See Mickens v.

12  Taylor, 535 U.S. 162, 171-72 (2002).  Here, Petitioner cannot show even a theoretical

13  division of loyalty let alone an actual conflict in his appellate representation.

14          Petitioner was represented on direct appeal first by Mr. Edgar, who filed the opening

15  brief, and then by Mr. Collins, who filed the petition for review, both members of the Office

16  of the Public Defender.  While the Public Defender was initially appointed to represent Coy,

17  Coy's case never went to trial and was resolved by a guilty plea less than two months after

18  the inmates' surrender on February 1, 2004.  Coy was represented by a member of the Legal

19  Advocate's Office in his plea proceedings.  Any temporary involvement by the Office of the

20  Public Defender in Coy's case at its initial stages was over a year before Petitioner went to

21  trial.  Petitioner's advisory counsel at trial was a member of the Legal Defender's Office, a

22  separate public office from either the Public Defender or the Legal Advocate.  Although

23  Petitioner claims that the Public Defender withdrew from Coy's case because of a conflict

24  with the case, Petitioner does not set forth the specific conflict or explain how the conflict

25  arose in his own case.  Petitioner, thus, has failed to show that any conflict existed that

26  denied him a constitutional right.

27          Regarding Petitioner's ineffective assistance claim, as the Court has indicated, to show

28  ineffective assistance of counsel, a defendant must show both that his counsel's actions fell

1  below an objective standard of reasonableness and that he suffered prejudice as a result. See
2  Strickland, 466 U.S. at 686. To show prejudice, "[t]he defendant must show that there is a
3  reasonable probability that, but for counsel's unprofessional errors, the result of the
4  proceeding would have been different." Id. at 695.

5    In his habeas petition, Petitioner claims, as he did in his second petition for PCR, that:
6  (1) counsel failed to properly challenge the decision to have advisory counsel read him the
7  direct examination questions at trial and (2) failed to properly challenge the decision to
8  impose restraints.[3]  The Court first notes that Petitioner's complaints appear to involve
9  strategic choices made on appeal and in his petition for review. It is well established that
10 counsel's "strategic choices made after thorough investigation of law and facts relevant to
11 plausible options are virtually unchallengeable." Id. at 690. "Judicial scrutiny of counsel's
12 performance must be highly deferential," and "a court must indulge a strong presumption that
13 counsel's conduct falls within the wide range of reasonable professional assistance." Id. at
14 689. Thus, Petitioner cannot identify a constitutional violation simply because appellate
15 counsel made his own strategic choices of the issues to raise on appeal.

16   In any event, Petitioner cannot show "a reasonable probability that, but for counsel's
17 unprofessional errors, the result of the proceeding would have been different." Id. at 695.
18 The record is clear and demonstrates that appellate counsel raised both the advisory counsel
19 ("ultimatum issue") and shackling issues on direct appeal in the opening brief as substantive
20 appeal issues. (Doc. 12, Exh. C); see Wassenaar, 161 P.3d at 616-20. Indeed, on June 6,
21 2008, the trial court dismissed Petitioner's second petition for PCR finding that Petitioner's
22 objections to the use of advisory counsel and to the imposition of restraints had been raised

23

24

---

25   [3] Although not discernable, to the extent Petitioner presents other particular factual
26 instances of ineffective assistance of appellate counsel in his habeas petition that were not
   first presented to the state courts, Petitioner's claims are unexhausted and procedurally
27 defaulted. See 28 U.S.C. § 2254(b); Ariz.R.Crim.P. 32.2(a), 32.4(a). Although a procedural
   default may be overcome upon a showing of cause and prejudice or a fundamental
28 miscarriage of justice, see Coleman v. Thompson, 501 U.S. 722, 750-51 (1991), Petitioner
   has not established that any exception to procedural default applies.

on direct appeal and were rejected by the Arizona Court of Appeals, and therefore Petitioner "cannot sustain his burden to prove the prejudice prong of *Strickland* and *Nash*." (Doc. 12, Exh. E, petition for review attachment, 6/6/08.)

The Court finds that the state court's rejection of Petitioner's claim as alleged in Ground Four was neither contrary to, nor did it involve an unreasonable application of <u>Strickland</u>. The Court will recommend that Petitioner's claim as asserted in Ground Four of his habeas petition be denied.

### CONCLUSION

Having determined that Grounds One through Four fail on the merits, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. <u>See</u> 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right

1  to appellate review of the findings of fact in an order or judgment entered pursuant to the

2  Magistrate Judge's recommendation.  <u>See</u> Rule 72, Federal Rules of Civil Procedure.

3      DATED this 28th day of February, 2011.

4

5

6                          Michelle H. Burns
                        United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28